All rise. Please be seated. The first case on the afternoon docket today is 516-0530 J.P. Morgan Chase Bank v. Regions Bank. Take the seat at the table, please. We have Ms. Stewart to the appellant and then are we going to split time it looks like for the appellees between Morgan and Homefront? Yes, correct. Okay, great. Ms. Stewart, when you're ready. I understand that I have five minutes reserved at the end for rebuttal. Yes. Your honors, may it please the court. John Molina has lived in his home at 501 South Vine Street since 2002 after purchasing it from his family friend Christopher Smith, who lived at 503 South Vine. Mr. Molina first learned that he would lose his home when he received an altered order of possession from the sheriff's department, giving him only 48 hours to move from it. When he received this notice, his first indication he could lose his home, he immediately filed with the circuit court to protect his interest in the home he had lived in for 15 years. Two issues are presented for review. The first issue is whether the judgment of foreclosure, the default judgment, and the order confirming the sale are void as to 501 South Vine Street in O'Fallon, Illinois, because the court did not have personal jurisdiction over Mr. Molina. The second issue is whether the trial court erred in denying Mr. Molina's motion to vacate the judgment of foreclosure, the default judgment, vacate the order confirming sale, and set aside the judicial sale for 501 South Vine Street. The circuit court… Sorry, I guess you said your client purchased the property from Mr. Smith. Yes, Your Honor. And it never recorded anything. Is that correct? That is correct. And I'm looking at the record based upon a contract. Is that correct? Yes, Your Honor. This contract appears to me almost like a life estate. How would you respond to that? Both the seller and the purchaser were unsophisticated parties. A long line of cases in the state of Illinois has indicated that the possession of property is equivalent to recording a deed. And so Mr. Molina entered into a contract that he understood to be a legal document, and subsequent to signing the contract, he has been in possession of the property for 15 years. Well, also upon death, he was the devisee, wasn't he? He was named in a will, also drafted by Mr. Smith, that named him as a devisee of the property. So he inherited it? No? His understanding was that when he gave Mr. Smith the $15,000, in 2002 he purchased it. It was Mr. Smith who completed the will that said that he was also a devisee to the property. Again, they were unsophisticated parties. Once the contract was entered into, regardless of whether it was a life estate or not, once Mr. Smith died, the home was willed to be bought? Yes. And he possessed it all that time? He did. He lived in it for 15 years, beginning in 2002, and is currently still in possession. Again, a long line of cases, including opinions of this court and the Supreme Court, state that actual possession of property is equivalent to recording a deed. Mr. Molina was an open, visible, exclusive, unambiguous occupation of the property. His possession of the home imputes to a prospective purchaser a duty to inquire into the interest of the person in possession. Both Chase Bank, as an encumbrancer who obtained its security interest after Mr. Molina took possession, and Homefront Properties, as a purchaser with a duty to inspect records prior to purchase, were on notice of his interest. Illinois clearly promulgates the responsibility by a foreclosing mortgagee to use due diligence and an honest effort to ascertain those with an interest in foreclosure proceedings. Chase Bank's fundamental failure to do so is the flaw in due process that led to Mr. Molina not receiving notice of the foreclosure proceedings. Chase Bank did not provide Mr. Molina notice of the foreclosure, despite having constructive notice of his interest as a result of his possession, and also Chase Bank did not provide him notice, though they had actual notice of interest when they received Mr. Smith's will, which has been filed with the circuit court. Counsel, does the record indicate that there was something obvious about the appearance of the structure, 501, that would indicate that it was a separate structure from the – apparently it was, I guess, a bigger structure listed at 503. What does the record tell us about how obvious it would be to someone who drove by that these were two separate properties? The record states that the notice of sale filed by Chase Bank says that it was a single-family home with no garage. And so the record indicates that there was one house at 503 South Vine. One house was included. The notice of sale indicated that there was one house included in the foreclosure action. Was the foreclosure action – so if you drove by this parcel that's described, would there be two houses there, the bottom of the garage and the bottom of the home? There would be one home and then a separate home with a carport, not necessarily a garage. But anybody driving by would see two houses? Yes. Okay. That would be kind of obvious, wouldn't it? Yes, it would be. Were they the same color? They were the same color, both houses. How close to – what was the proximity of one to the other? Approximately 30 feet, 30 to 40 feet. 503 is a larger house. 501 is approximately a four-bedroom house – or a four-room house, significantly smaller. Did your client have a car? He did. And it would have been parked in the carport? Correct. And then there was a separate kind of driveway abutting 503 South Vine alongside of the house. Was there any indication that either house was on the property? After Mr. Smith passed away, no one lived in the house. And so no cars. However, at 501 South Vine, because Mr. Molina continued to live at the house, his car would have been there. He received trash service there, so there were trash cans in front of him. He didn't pay tax? He paid the tax? The taxes were included as part of an escrow in the mortgage. Mr. Molina, again, is an unsophisticated purchaser who had never owned a home before and had never had responsibility to pay real estate taxes. When a tax deed is issued, the person in possession or who owns the house still receives notice before the tax deed, six months, to give them an opportunity to protect their interest. Mr. Molina at no time had the opportunity to protect his interest in the home. As with the notice of sale, additionally an affidavit of service by publication was filed in the case by Chase Bank. And it stated that upon information and belief, no heirs or beneficiaries could be found without stating the measures that it took to find the heirs and beneficiaries. The record in this case indicates that a pro forma recitation of requirements with no substantial effort by Chase to actually provide notice to Mr. Molina or any other interested parties. After considering the notice of sale and the affidavit, if there is an agreement that 501 South Vine is not part of 503 South Vine's foreclosure, then Mr. Molina's interest in his home remains intact. However, if Chase argues it knew nothing of 501 South Vine, but it can take it without affording Mr. Molina due process, then Illinois' long line of cases that charge subsequent purchasers with constructive knowledge of the rights of possessors are meaningless. Likewise, Homefront properties cannot be held as a bonafide purchaser. Homefront is charged with making the same inquiries of the person in possession as any purchaser or encumbrancer. Mr. Molina's possession has the same effect as recording, charging a prospective purchaser with notice of all legal and equitable claims of the occupant. Additionally, Christopher Smith filed will, as well as the flaws in the record, including the notice of sale, which only indicates a single family home, and the affidavit of service by publication, which does not state any efforts to ascertain heirs or beneficiaries, Mr. Smith should have put Homefront property on notice to inquire further into any potential property interests. Mr. Molina would respectfully request that this court find the trial court lacked personal jurisdiction over him, find as a matter of law that Homefront properties was not a bonafide purchaser, reverse the orders of the trial court denying Mr. Molina's motions, and remand this matter for further proceedings consistent with the decision. Let me ask you very quickly. There is a motion that was taken with the case to supplement the record with neighborhood lending services versus Callahan. How do you respond to that motion? Your Honor, Callahan is not persuasive on this issue because it took up the matter of subject matter jurisdiction rather than personal jurisdiction, the basis on which we have appealed this case. Additionally, unlike Mr. Molina, Sanders, the intervener in that case, was never in possession of the house. He obtained his interest after the mortgage had been entered into, and Mr. Molina has lived in his house for nine years. The facts of that case are very different from this one. Thank you very much. I'll have a few minutes after they make their arguments. Who's first? I'll go first. Okay. May it please the Court, my name is Edward Lesniak. I represent JPMorgan Chase Bank, and the first thing I want to do is to thank the Court for rescheduling the argument to today. It was scheduled originally in August, and you accommodated my family on vacation. I greatly appreciate that. I want to thank you in person. I will be handling the matters addressing to you, the matters involving title. That is, the validity of the foreclosure proceeding. Mr. Reams, who represents Homefront, will be addressing the matters involving possession. That is, his client's right to take possession of the property. So that's how we're dividing our time. I will address the motion to cite the Callahan case. Mr. Reams will address any issues you have with respect to the discovery, issues that came up as part of the appeal. Thank you. Let me ask you this question. Do you agree that if there was no personal jurisdiction over Mr. Molina, that the judgment of foreclosure and sale was void as an issue? Absolutely not, Your Honor. No. Absolutely not. Why not? Because Mr. Molina was not a necessary party to the case. No, I'm just, oh, okay. Okay. I see. The issue of service is a red herring. Why was he not a necessary party if he was a possessor? Because the statute provides that, the foreclosure statute provides, that only the mortgagor or any other person who is obligated to make payment on the debt is a necessary party. This situation arises all the time that people who are in possession of properties are not made parties to the case. It happens in foreclosures on apartment buildings, for example, where there's no intent to remove a tenant because when the lender takes ownership of the property, it wants the tenants in place to pay rent. But Mr. Molina claims he was an owner, not a tenant. Okay. But he was not an owner, Your Honor. Well. That's what the record discloses. Okay. So the will doesn't make him an owner? You want to go, no, absolutely not. The will, the statute, let me get the right statutory reference for you because there's a case that's cited by Ms. Stewart in her opening brief, a Supreme Court case called Eklund v. Jankowski, 407 Illinois 263. She didn't cite us for this principle, but when you read the case, what it says in the Jankowski case is that property only transfers under a will, real estate only transfers under a will if the will is probated. Okay. Now that's a 1950 case. It's still valid law now. It's the Illinois Supreme Court. But I want to give you the citation to the Probate Act because that citation had changed, although the language has not changed. And that would be 735 ILCS 5-4-13. Every will, when admitted to probate, is effective to transfer the real estate of the testator bequeathed in that will. This will was never admitted to probate. Now that explains a lot. Okay. What it explains is, number one, why Mr. Molina would not have been added to the case, separate and apart from the fact that 501 had a separate address and 503 had a separate address. And we don't have to get into that point. The person, Margaret Firenzo, who was the devisee of the 503 property, she was not made a party to the case. But who was made a party to the case? Ms. Taya Alfiero. Why? Because the special representative, who was appointed after Mr. Smith died, filed a report, and the report said Ms. Alfiero is an heir. So we named the heir. If the will had been probated and the property transferred to Mr. Molina and Ms. Firenzo, they would have been named. But that's why they were never named. They're not necessary parties. So the filing of a will with the circuit clerk is not probated? No, it is not. The will has to be admitted to probate. That is not probate. Here's the reason why, Your Honor. Anybody could file any document. Anybody could make up a will, file it, and say, hey, I get that property under the will. The will has to be probated. The will has to be examined. It has to be authenticated. Heirs have to be notified and have an opportunity to challenge the will. You simply can't just file a will on the basis of that transfer of property. That's what the probate proceeding is for, to authenticate that will, to check the signatures, to make sure it was properly executed, properly notarized, to allow heirs an opportunity to challenge it. So that's such a basic principle of law that when I looked for it in our brief, I realized we hadn't really cited the case. But the case is in the record. It's the Jankowski case, and there are numerous cases after it, after the Jankowski case. Let me ask you this. I was really concerned about this. In the judgment for foreclosure and sale, which was dated July 30th, 2015, it specifically lists 503 South Bond Street. Yes. And then in the order approving the report of sale, which was entered six months later, December 10, 2015, the exact same legal description is cited as in the July 30th judgment, but somebody changed the address. Now, did the court change the address, or did some person other than the court change the address? With all due respect, I'd like to defer that question to Mr. Reams. He is the one addressing the possession issue, and I don't want to give an answer that's going to step on his toes, if you mind. I'm sure he'll answer that question when he steps up here. Okay. Okay, that's how we've agreed to divide our time. Let me ask you this. How about your due diligence and your affidavit for publication? Judge, what is the point? Mr. Molina was not a necessary party. He's not a party to the case. Well, when you get a publication, you do to all unknown parties, right? Correct. For publication? Yes. So you're saying that you didn't have to do any due diligence to get publication? They're non-record owners, Your Honor. You had a process server go out there, a real person went out there, and nobody told you there were two houses out there? I don't think anybody told us there were two houses. But, Judge, my point is, in the end, it doesn't matter. Because you're talking about inquiry notice. What would inquiry notice get you? We need to take the next step here in the analysis. Let's assume Chase had gone out and saw Mr. Molina and went up to his door and knocked on it and said, What are you doing here? What's he going to show him? The contract conveyed nothing to him, Your Honor. It conveyed nothing. There is no transfer language. Where is there language in that contract that said, I, Christopher Smith, hereby transfer to you, John Molina, the following described property in fee simple? Now, Justice Silverstreet suggested a life estate. I disagree simply because when you look at the contract, Mr. Molina's possession was subject to being divested if he died or if Mr. Smith died or if Mr. Smith transferred the property to somebody else. If Mr. Smith had transferred the property, why did he put it in his will three years later? This contract says Molina agrees to purchase and Smith agrees to sell. Vote 501 South Vine Street. How can that not be an intent to sell in your mind? Your Honor, I'm not talking about intent. Who can tell their intent? It says who to make the check payable to, what the closing date is. I mean, do they have the right to serve it? It looks like actually for somebody who was not very sophisticated, they had it notarized. Any one of us who has purchased the house know that you buy the house by signing the contract and then you close. Then you obtain a deed in which your seller says, I hereby convey this property to you, and you take that deed to recorder's office and you put it on record and you let the whole world know. I'm not aware that a quitclaim deed of any kind can be recorded or that a contract like the possession with the contract by case law is enough. Isn't it? To transfer ownership? Isn't that the argument that the appellants make? No, the appellant's argument is that we should have known he claimed an interest. But what was that interest? Ownership. How? What in the record, Your Honor, what in the record shows a transfer of title? We're talking about a transfer of title. How could that contract transfer title when it says that if Mr. Molina dies, his heirs can come and take his property contents from his house and there's Mr. Smith's house? How could he have owned the property, obtained ownership, if the contract says if Mr. Smith dies, Mr. Molina gets his $15,000 back? How could Mr. Molina have ownership of the property if the contract says if Mr. Smith decides to transfer it to somebody else, Mr. Molina gets the property, gets his $15,000 back? If Mr. Smith transferred the property, why three years later did he put it in his will? He didn't own it anymore according to what you're telling me. The sad fact of the matter is Mr. Molina, unsophisticated, I'm not blaming him, he didn't take any ownership interest in that property. He might have had the right to possess it, directing it to what Justice Overstreet said. I believe he had a license to live there until he died, until Mr. Smith died, or until Mr. Smith sold it. But he had no fee simple title to that property. Well, let's take Justice Overstreet's position that he had a license to it. Your argument would still be that he had no duty to give him ownership. My argument would be that if we had done the extraordinary examination of the property that the steward suggests they should have done. Meaning a drive-by? A drive-by wouldn't show... By your private investigator? No, because the address that Mr. Smith gave to the bank was 503, and the drive-by would show that there was a 503 South Vine property. Anybody who didn't have a survey wouldn't know that 501 was part of 503. They'd just think it's another property. That was the trial judge's point. Okay, well, let's hear about that. Thank you, Judge. Thank you. Mr. Reams, is it Reams? Yes, Your Honor. Mr. Reams, my question to you is how did that order get changed? Okay, when Mr. Darren Mathis, who's the principal of Homefront Properties, obtained a writ to evict anyone who might be in possession of 503, he'd gone out to the property and found out at that point that there were two houses on this. So he took the writ to the sheriff's office and said, you know, there are two residences on this property, and the sheriff's office told him, well, we can only serve this one that says 503, but if you get another copy and put 501 on it, pay us the additional fee, we'll serve that one too. So he thought, okay, I'll just get another copy and put 501 on there since there's two residences on the parcel that I purchased. So he just, so who did this? Darren Mathis of Homefront Properties. So he just changed the court order? Yes. And it was based on the changed court order. He wrote it in, the sheriff executed it. The sheriff told him, put the correct address on there, we'll serve it. So he did. Do you think he can do that? No, I told him he couldn't do that after the fact. Yeah, so what effect does that have? I don't believe it has any effect on his bona fide purchaser status. He didn't know who, or excuse me, he didn't know that there were two parcels, or two residences on the parcel when he purchased it. The time to determine when a bona fide purchaser is bona fide or not is when the certificate of sale is produced. That was November 2, 2015 at the time, contemporaneous with his payment of the money at the foreclosure sale. And that was for 501? No, it was for 503. That's the property that's noticed up in the notice of sale. The bona fide purchase by Homefront in November was for 503. The parcel commonly known as 503. It turns out that somebody somewhere along the way put another residence on there and called it 501. But you can put a second building in there and call it 501 and a half. I mean, he purchased the entire parcel, which was commonly known according to the St. Clair County Recorder of Deeds as 503. They don't have a 501 on record at the St. Clair County Recorder of Deeds. You search that address, you're going to come up blank. That's because there was never any division of property. Correct. And that's the problem for Mr. Molina is what did he purchase? If he purchased anything, what did he purchase? There's no the west 100 feet of this lot. And that's where we get into the problems with Mr. Molina's claims of notice. If there had been record notice, as Ms. Stewart claims, the will gave record notice. The problem is a couple things. It says it purports to give 501 South Vine to Molina. So if I'm looking to purchase 503 South Vine, I see a will that's been filed with St. Clair County Circuit Court that says 501 is transferred. I don't have any idea or reason to know that that's going to impact 503 because they're separate numbers. Additionally, there's a problem with the language of the will itself. It says he transfers 501 South Vine. 501 South Vine where? There's no evidence of where 501 South Vine is located in this will. And that to me is a threat. So now you're interpreting a will, which we're not even supposed to get into. This is an issue about notice. Correct, but we cannot read into the will that he meant 501 South Vine in O'Fallon, Illinois. It could have been the 501 South Vine in Urbana, Mahomet, Hayworth, Sparta. All of those are just within the state of Illinois. We cannot assume that it was going to be 501 O'Fallon. And what really would 501 be? I mean, even the actual agreement just talks about essentially a house, right? I mean, since there was never any actual provision or legal description, what was conveyed? That's a good question. I don't know the answer to it because there's never been anything recorded. That's the problem. That's why we have recordings in the Conveyance Act. Are you saying that everything has to be recorded? Is that your argument? If you're going to put third parties on notice. Really, so what's the effect of a quick plan B? You don't have to record that. But if you do that, and you don't record it, and somebody else comes in and puts a lien on the property, for example. If you didn't record it, well, there are liens ahead of your deed if you decide to record it later, for one. No, but if you're living in a house and you have a quick plan B from the owner, are you saying that you don't record it? Are you saying that there's no notice to somebody that might come to that property? When you say might come to the property, what do you mean? You mean physically come to the property? Well, I guess if you tell them that, yes, I own this, then, yeah, they would know something. But if somebody were to just drive by the property, what is to let them know that you have an ownership? I mean, in other words, it's the same occupancy. Correct. If you see that someone's an occupant, do you have a duty to inquire? I think if somebody had been occupying, in this situation, if they had been occupying 503, yes. What is the physical layout? Is this in a subdivision or out in the country? It's in town. I don't know if I would describe this as a subdivision, per se. Are there houses on either side? There are houses all around. But they're not in any kind of order, like a platted subdivision? Not that I'm aware of. Because what I'm having trouble with is understanding what it is that even Mr. Molina thought he bought, because if the property is just one property, the most he could be, in his mind, buying is a house. Is that five feet on each side of the house, or 40 feet, or what? And that's the question I asked at the trial court. I mean, is it literally just the land under the residence? I mean, does the air drop in, or does he have five feet of yard, 20 feet? Does he have half the lot? Nobody knows. Because it's one piece of property, which has never been divided. It's never been partitioned. There was never a deed saying you get X amount of the lot, or anything to that effect, no. But before we ever get to your claim, I'm so bothered about the fact that regardless of what he thought he bought, whether it was the ground underneath the house, do we really get to that? I mean, Justice Overstreet, to me, just hit it on the head. And that was, if you drive by and it's occupancy, do you have a duty to inquire? If there's occupancy in 503, that's the part... Why not 501? Because that's not... You didn't even know it existed until you drove by. If you were to drive by, you're going to see two houses. 501, 503. 503 is the property that's the subject of the foreclosure. It's what was listed in the publication notice. That's where, if someone was there, yes, inquire of them. That's the property that is listed for sale. So you're saying that a drive-by person might not have any awareness that there is another house on the same physical property. Correct. It's not like... But you got a plan. You got a legal description. You're not an unsophisticated buyer. J.P. Morgan is not an unsophisticated mortgage buyer. So we're not talking about somebody just driving by a house. You actually have a legal description that shows a flat piece of property. Yes. So when you drive by, you know exactly what that property line is, and you're not so unsophisticated that you just drive by and say, oh, well, that house might not be on the property. I mean, really, are you trying to sell that argument? I would disagree with you on that, Your Honor, because, yes, you have a legal description. You have a plan. You have a drawing that shows exactly. Not in the notice of sale. No. I'm asking, do you have it? You have it in your possession, and so does J.P. Morgan. You know exactly where those boundary lines are, and your private investigator who goes out there is saying, I don't have any idea what's on that property. I would disagree with that, Your Honor. Okay. I think many of the property buyers, they see the notice of sale. They drive by, see if the property is decrepit or if it looks like at least it's a decent risk. Don't you want to know where the property line is at? How big a lot is it? Of course you do. The problem is 501 is on a corner. So, you know, if you just see an address, you're going to think 503 is this one. 501 is the neighbor. 505 is the other neighbor. But you haven't answered my question. You have the plan. You know that that property goes to the foreman, right? If you look at the plan, yes. But if you just look at the notice, you're not going to notice that. Are you saying you didn't have a plan? I don't believe my client did. I can't affirmatively attest to the fact that he did or not. Well, thank you for putting up with our cross-examination. That's okay, Your Honor. Thank you. Okay. Ms. Stewart. Ms. Stewart. I'm going to start grilling you. I just am having a lot of difficulty buying your feasible argument when you get to the part of the agreement where it starts, different scenarios. In the event that something happens to Chris or that Chris sells the property or transfers it to another, then Gene will get his money back. In the event of Gene's demise, Chris retains ownership of the house. Retains ownership of the house. How can he retain ownership if he sold it at a fee simple? And the contents of the house get given back to Gene's family. I mean, that takes away all this remaining language, takes away any intent of a fee simple sale in my mind.  I appreciate that, but even an unsophisticated person should be able to appreciate that there's different scenarios where he would get his money back and Mr. Smith would retain ownership of the property, and none of those are consistent with a fee with you owning it and keeping it and having the right to do with whatever you wish to do with. And I think even unsophisticated, simple legal agreements of people that did not have any expertise would be familiar with that intent and purpose. What we know is that Mr. Molina did possess the property for 15 years. He did provide $15,000 to Mr. Smith. But upon his death and it was sold, he could get that money back. Was there any attempt to get his, receive his $15,000 back once he found out that there had been a sale? Was that inquired into or explored? No, Your Honor. Mr. Molina did not specifically know about the mortgage with Chase Bank. He knew that he gave Mr. Smith $15,000. At that time, the property was encumbered by another mortgage. He remained in possession for 15 years. He never made an attempt to get the money back from Mr. Smith or Martha Ferrandoza, his power of attorney. He intended to stay in the property and he did. Could he make a state claim? And I say could, I suppose could, but he has to. Is that what you're telling us? Yes. He was not aware of filing the will. But I don't think that that means that title didn't pass to him, as counsel for Chase Bank asserts. A 1984 case by the Supreme Court, In re Hall, says that title to real property passes to and bests in a devisee upon the testator's death and not on the probate of the will. And so title rests with Mr. Molina, even if he did not probate the will. It's at their. Yes. Yes, Your Honor. Yes. In re Hall. That was my understanding is that once he died, then regardless of all of this other, that he became the title owner of his house. And so I'm wondering if that made him a necessary party. I agree with counsel in that necessary parties are parties to a mortgage. However, by not naming other parties, they do so at their own peril. The case, an Illinois Supreme Court case has said that the Illinois mortgage foreclosure law states that disposition of mortgage real estate is subject to the interest of all persons not made a party. So if an interest is not foreclosed, it survives the foreclosed mortgage. So what does that mean? And what case is that? That is ABN Mortgage Group versus McGann, an Illinois Supreme Court case. I believe we cited it in our initial brief. So if there is an ownership interest that passes out of the will, and they don't name 501 in the judgment of foreclosure, is it your opinion that 501 remains your client's home? My opinion, it is that there was no personal jurisdiction attained over a person holding an interest in the property, and so any foreclosures, any judgments, any orders entered prior to Mr. Molina's appearance are void as to him. Okay, so let's suppose this goes back. Let's suppose that this was regular. How does a trial court figure out what Mr. Molina bought, as these justices have been asking? I mean, how is that going to be determined? Because there are no law lines? Of course it's a question of fact. Looking at the property that Mr. Molina owns, what the intention of the parties were. He has a home with a carport that he has lived in for 15 years. He understands what the boundaries of his house are, and they were agreed to with Mr. Smith. He's remained in possession of the property. He was allowed to use it. He was not evicted from the property. They have made an agreement to what he could use and what was his. Thank you very much. Thank you. We appreciate the arguments of counsel in this case. It will be taken under advisement and reported to the agency. Thank you very much. Thank you.